HOLLEY v. ANNESS.

1. SPECIFIC PERFORMANCE.—The Court of Equity will not entertain a bill by vendor to enforce the specific performance of a contract for the purchase of land, where non-payment is the only ground for relief, there being an adequate remedy at law on the contract.

2. IBID.—The doctrine of specific performance of contracts for the sale of land considered, and specific performance refused at the suit of vendor, without prejudice to his legal action, where the land was proved not to contain the brick-clay which both parties believed it to contain, and which was its chief value and the inducement to defendant's purchase.

Before FRASER, J., Aiken, April, 1893.

Action commenced June 2, 1892, by vendor against vendee for specific performance.

*Messrs. Croft & Chafee*, for appellant.

*Messrs. Henderson Bros.*, contra.

April 25, 1894.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This is an action brought by plaintiff against defendant to enforce the specific performance of a contract, to purchase a small parcel of land described in the complaint, which reads as follows:

"AGREEMENT.—This memorandum of agreement made this 12th day of March, 1892, by and between M. T. Holley, jr., and Charles Anness, both of the County of Aiken and State aforesaid, witnesseth: That Holley agrees, if he can get it released from the lien of a mortgage on it now held by E. H.

Coster, to convey to said Anness, his heirs or assigns, on or before the first day of May next, and upon payment of the price hereinafter named, a part of his farm near Aiken, known as the 'Crossland place,' to wit: so much thereof as may be ascertained to be contained in a survey to be made to contain the pond on the northeast part of said tract, the eastern boundary of which is to be a road between Holley and Ann Mitchell, the northern boundary of which is to be the line between Holley and W. H. Moseley, and the western and southern line are to be straight lines on Holley's land; and the said Holley agrees to give the right of way to said Anness by a road ten feet wide over his land to the Aiken road; and the right and privilege to drain said ponds into his land by covered drains, but not otherwise. And said Anness on his side agrees to pay one hundred and twenty-five dollars per acre for said land as it may appear by said survey, and to pay the same by the first of May next. He this day has paid fifty dollars to bind the bargain." (Signed) under seal by the parties. It appears that a survey was made, and that the land embraced turned out to be eleven and one-third acres of land (11⅓).

In his defence the defendant alleges that "the said agreement was entered into under the following circumstances, and upon the following representations made by the plaintiff as an inducement for the defendant to purchase the parcel of land mentioned: this defendant was a stockholder in the Aiken Fire and Ornamental Brick Company; that said company had need of a large quantity of clay of a certain quality to be used at their works in the manufacture of brick; that the plaintiff in some way became aware that the said company needed such clay, and knowing that the defendant was connected with the company, he sent two or three wagon loads of clay, which the plaintiff represented and defendant believes came from said piece of land; that the plaintiff represented said piece of land as containing three or four acres, and represented that it contained an abundant supply of such clay, stating that the vein or layer of said clay was twenty feet deep; that acting upon said statement and representations of the plaintiff, he was induced to sign said agreement, and pay the sum of fifty dollars thereon;

that soon after the said agreement was signed, he (the defendant) caused said vein of clay to be examined, when it was discovered that the representations concerning the same made by the plaintiff were untrue, and that instead of there being a vein of the quality of clay twenty feet deep, as represented by the plaintiff, it was only about three feet deep, which renders the same wholly inadequate for his use, and rendered the said piece of land of very little value for the purposes for which he was led to purchase the same; that by reason of such false representation on the part of the plaintiff, the said agreement operates as a fraud upon this defendant, and is, therefore, null and void, and the plaintiff, therefore, owes him the sum of $50."

The cause came on to be heard by his honor, Judge Fraser, sitting on the equity side of the court. He heard the testimony (which is all printed in the record), and rendered a decree on the whole case; but from the view which the court takes, it will only be necessary to consider the following: "I find that there was nothing improper, intended to deceive, in the way in which defendant's attention was brought to this land, and the clay it contained. The defendant claims that the plaintiff represented to him that the land contained a bed of clay twenty feet in depth, whereas, in fact, it contains clay to the depth only of 20½ inches. It does not appear by a preponderance of the evidence (and the burden is on the defendant), that the plaintiff made any such representation. It is not contended that plaintiff ever made a statement that he had made any examination to ascertain the depth of the clay. Plaintiff pointed out an excavation from which a sample had been taken, which defendant had seen; and if we assume that plaintiff did say, as defendant says he did, that there were twenty feet of clay, it was a mere opinion, and the defendant had no right to regard it as any other. The defendant is a man of experience in such matters, and the testimony shows that it was no difficult matter to make an examination to ascertain the amount of clay. The impression made on my mind is that the defendant took the chances, and preferred not to inquire further into the matter before closing the trade, because if, as said in substance by one of the witnesses for defendant, there had been twenty feet of clay,

then $125 per acre would have been a very inadequate price to pay for it. I see, therefore, no sufficient reason for holding that there was any such conduct on the part of the plaintiff by misrepresentation or otherwise, as to authorize this court to hold the said contract fraudulent and void. The defendant must be required to perform his contract," &c.

From this decree the defendant appeals to this court upon the following exceptions (omitting others not considered below): 3. Because it appears from the weight of the evidence that in order to induce the defendant to purchase the land described, the plaintiff fraudulently represented to the defendant that the bed of clay upon said piece of land was twenty feet thick, and the Circuit Judge erred in not so finding. 4. Because the statement made by the plaintiff to the defendant, asserting the clay bed on the land to be twenty feet thick, was a statement of a fact, intended to induce the defendant to buy, and not merely the expression of an opinion by the plaintiff, and his honor erred in not so finding. 6. Because it appears from the weight of the evidence that the defendant was induced to agree to purchase the land in question upon the representation that it contained a clay bed of a certain quality twenty feet thick; that such representation is untrue, and whether it was made through the fraud of or by mistake of the plaintiff, is immaterial. In either case the defendant should be relieved from his agreement to purchase, and the Circuit Judge erred in not so deciding. 7. Because it appears from the evidence that the clay bed upon the land is only 20⅓ inches thick; that by reason of the layer being so thin, it is utterly useless for the purpose for which the defendant wanted it, and the piece of land is almost worthless; that under these circumstances, to force specific performance would put a hard and unconscientious bargain upon him—such a bargain as a Court of Equity would never enforce, but would leave the plaintiff to seek his remedy at law. And it was error in the Circuit Judge not so to decide.

It seems that the defendant was engaged in the business of making fire brick. He desired to obtain a certain kind of clay for that purpose, and with that view negotiated with the

plaintiff, who had exhibited samples of clay from his land; and, being pleased with the samples and recommendations made, the defendant signed the agreement set out in the case, which, it will be observed, makes no reference whatever to the main object of the purchase—*the clay*, but simply indicates certain boundaries within which *the clay* was to be found, and which, by subsequent survey, were found to contain 11⅓ acres. Immediately after the contract was signed, it was demonstrated by boring that there was not enough of the kind of clay desired, in the territory indicated (11⅓ acres), even to pay the expenses of taking it out of the ground; and that as to the object for which the purchase was made, there was an absolute and total failure of consideration. As soon as the defendant discovered that the clay was not where it was represented to be, he notified the parties that he had been deceived, and would not take the little parcel of land. But as the defendant had promised in the agreement to pay $125 per acre for the land included within the survey, the purchase price amounted to the considerable sum of $1,416.25, and deducting the $50, paid at the time of the execution of the agreement, to $1,366.25, with interest. In order to recover this amount this action for specific performance on the equity side of the court was instituted, and judgment rendered and regularly entered up against the defendant for that amount, with interest and costs.

The question which presents itself at the outset is, whether this was a case which the Court of Equity had concurrent jurisdiction to entertain, for the purpose of enforcing the agreement by the equitable remedy of specific performance? It seems to us that the recovery of the purchase money of the little parcel of land, supposed to cover the clay, was purely legal in character, that there was plain and adequate remedy at law to recover it as a debt, and that the Court of Equity had not jurisdiction to grant the relief prayed for by the extraordinary equitable remedy of specific performance. Mr. Fry, in his work on Specific Performance, says the ground of jurisdiction being the inadequacy of the remedy at law, it follows that where that remedy is adequate, chancery will not interfere to compel specific performance. It is on this ground

that the court refuses generally to entertain suits  *  *  *  in all cases where the contract is satisfied by a mere payment of money.   There is probably no principle of equity more thoroughly established than this." Fry on Specific Performance, section 12, and notes.   In section 178 of Pomeroy's Equity Jurisprudence, it is said: "Cases in which the remedy is a mere recovery of money, do not ordinarily come under the concurrent jurisdiction.   Where the primary right of the plaintiff is purely legal, arising either from the non-performance of a contract or from a tort, and the money is sought to be recovered as a debt or as damages, and the right of action is not dependent upon, or connected with, any equitable feature as incident, such as fraud, mistake, accident, trust, accounting, or contribution, or the like, full and certain remedies are afforded by actions at law, and equity has no jurisdiction; these are cases especially within the sole cognizance of the law."

But if in this we are in error, we do not think that the evidence here makes a case for specific performance.   As Chancellor Johnston, in one of the cases upon the subject, said: "There is a material difference between a party who seeks to rescind and one who seeks to enforce an agreement, as it requires much stronger evidence to effect the former than will be sufficient to enable the defendant to resist the latter. It seems, from what is said by all the elementary writers on the subject, that the specific performance of agreements is not an absolute right in the party, but a question of sound discretion in the court.   There are certain qualities that every contract must possess before it can come within the class of cases entitled to this extraordinary remedy," &c.   The remedy is, in one sense, discretionary, the question being, not what the court *must*, but what, under all the circumstances of the case, it *should* do, in the interest of justice. *Railroad Company* v. *Cromwell*, 91 U. S., 643.   "The power of a Court of Equity to enforce the specific performance of a contract, should be exercised under the sound discretion of the court, with an eye to the substantial justice of the case; and where a contract is 'hard and destitute of all equity,' the court will leave the parties to their remedy at law." *King* v. *Hamilton*, 4 Peters, 311.   See

*Barksdale* v. *Payne*, Riley, 181; *Cabeen* v. *Gordon*, 1 Hill Ch., 51; *Gasque* v. *Small*, 2 Strob. Eq., 72; *Spears* v. *Long*, 32 S. C., 528; 3 Pom. Eq. Jur., § 1415. As Mr. Pomeroy puts it, "the contract must be certain, natural, and upon a valuable consideration; it must be perfectly fair in all its parts, free from any misrepresentation or misapprehension, fraud or mistake, imposition or surprise."

Now, in the light of these authorities and the principle announced, we cannot say that the evidence here makes a proper case for specific performance. It may be that the defendant made a mistake in signing the agreement before he had made proper inquiry as to the existence or non-existence of the clay, which was the real object of the purchase. But we cannot doubt that this is one of the cases which the Court of Equity will not require to be performed specifically, but leave the parties to their rights at law.

The judgment of this court is, that the judgment of the Circuit Court, ordering specific performance, be reversed, without prejudice to any of the legal rights which the plaintiff may have in the premises.