### 9064

### MOBLEY v. QUATTLEBAUM.

(85 S. E. 585.)

Vendor and Vendee.  Misrepresentations.  Caveat Emptor.  Tender
of Title.  Specific Performance.

1. Vendor and Purchaser—Misrepresentations.—Representations as
to amount of rents derived from property offered for sale and rumors
as to the passage of a city ordinance with reference to paving, and
the intention of a railway company to remove its shops are dealer's
talk, not calculated to mislead a resident of the city and wide awake,
shrewd and extensive trader in the local real estate market, accus-
tomed to make careful investigations and well informed as to the
prevailing market prices, and changes occurring in value of local
real estate, where the vendor's agent informed the purchaser that
the statements were not guaranteed, and the truth or falsity of such
representations was easily ascertainable by the purchaser from
sources of information readily within his reach; and where such rep-
resentations were not fraudulently made and such purchaser made
no effort to ascertain their truth, their falsity affords no defense to
such purchaser in an action to enforce contract of sale.

2. Vendor and Purchaser—Tender of Title.—The mere existence of
outstanding encumbrances on title tendered is no defense to the pur-
chaser in an action to enforce compliance, where the vendor had

arranged, was at the time prepared to remove these encumbrances, upon the vendee's compliance, and to give him an unencumbered title in fee.

Before PRINCE, J., Columbia, July, 1914.    Reversed.

Action by John G. Mobley against E. G. Quattlebaum. From a decree in favor of defendant, plaintiff appeals.

The Circuit decree was as follows:

This is an action commenced by the plaintiff vendor against the defendant vendee, to enforce specific performance of a contract made on 17th day of March, 1913, by which the plaintiff agreed to sell and convey to the defendant a lot containing one acre measuring 208 feet on each side, in the city of Columbia, at the southeast corner of Barnwell and Blanding streets, in the said city, at the price of twenty-two thousand ($22.000) dollars, of which price the defendant was to pay five thousand ($5,000) dollars in cash upon the execution and delivery of the titles within sixty days after contract made, and was to give "bond and mortgage for $17,000 for three years at 6 per cent. from this date."    Deed to be made and bond and mortgage to be given within sixty days from the date of the contract.

The complaint sets out the contract in full, and there is no dispute as to its execution.

The defendant denies that the contract became operative and binding because of misrepresentations which entered into it.    The contract itself provides that the plaintiff is "to convey the said property above described to the said E. G. Quattlebaum, heirs, or assigns, in fee, by a proper deed, with covenants of general warranty, with the dower duly renounced; free from encumbrances, except such as are herein agreed to be assumed."    There is nothing in the contract and no allegation or proof showing or tending to show that there were to be any mortgages assumed.

The plaintiff alleges, paragraph 1, that he is the owner in fee simple of this land; and that, paragraph 4, he is ready

and willing to perform the agreement on his part, and "stands ready to convey and let this defendant in possession of said premises," etc.; and that, paragraph 5, on the 15th of May, 1911, he "duly tendered to the defendant the deed for the premises pursuant to the agreement;" and that, paragraph 6, he "has duly performed all the conditions of the said agreement on his part."

The defendant, in answer to the allegations of paragraph 1, as to the title of the plaintiff, says he has no knowledge sufficient to form a belief as to the truth thereof, and a similar answer is made in respect to the allegations of paragraph 4 as to the willingness of the plaintiff to perform his agreement.

In answer to the allegations of paragraph 5 as to the tender of the deed, the defendant only admits tender of "some paper writing." But denies knowledge or information sufficient to form a belief as to the balance of the allegations in reference thereto; and in answer to the allegations of paragraph 6, that the plaintiff has performed his part of the agreement, defendant denies the same.

The defendant, as a further answer, sets up misrepresentations by the plaintiff inducing him to enter into the contract and material to it.

The material representation relied upon by the defendant in his pleading and his proof consist of the statement contained in a paper writing, Exhibit "Y," which was prepared by the plaintiff himself and furnished by him to his agent, Keenan, for the purpose of being used "by Mr. Keenan to sell the property by," and it was prepared to "enhance the sale," in the language of the plaintiff himself. The statements contained in this paper and relied upon by the defendant, are the following:

"Premises now renting for $95 a month. Ordinance passed by the city council making Blanding street the next to be paved.

Southern Railway authorities have decided to move shops which are in front of the residence in the next two years. This work may be done much sooner as the land now occupied for shops is totally inadequate."

Defendant alleges and offers testimony of himself and of the agents for plaintiff, showing that the paper writing containing these statements, prepared by the plaintiff himself, was offered by plaintiff's agent to the defendant before he entered into the contract sued on herein. The agents say that they believed the statements to be correct, and so represented them to plaintiff, and the defendant says that he relied upon them in making the contract. And there is much evidence offered by the defendant, tending to show that these three distinct representations would materially enhance and add to the value of the property in question.

On the other hand, plaintiff seeks to limit the authority of his agent, and the scope and effect of this paper writing, claiming that it was only given to the agent as a matter of opinion, largely based upon rumor and hearsay, and that the agent had no authority to present or represent these statements as facts. And plaintiff also takes the position that defendant could have ascertained the truth of these statements by inquiry and diligence and ought not to have relied upon them.

Plaintiff also offers evidence to show that the statement as to the rents is true and that the statement in regard to the removal of the railway shops is not material and would not add materially to the value of the property because the land where the shops are situated might be put to other purposes which would also detract from the value of the property; and that defendant could have easily ascertained by inquiry from the city authorities as to whether paving ordinance had been passed.

The evidence in the case shows that the defendant did not wait for sixty days to elapse, but had made his arrangements, and had made an agreement with the plaintiff in

consideration of a small discount, to carry out and comply with his contract, in the early part of April, 1913, and was ready and able at that time to do so.  On the day fixed for compliance, the defendant, while coming into the city for the purpose of meeting an appointment to carry out the contract, first learned that the rentals actually being received for the property were materially different from that stated in the paper writing.  He then called up the attorneys who were acting for both parties and advised them of this fact, and that he must refuse to comply.  He says that he then made further inquiries and ascertained that the other statements contained in this paper were not correct.

The defendant testifies that he went over with the plaintiff the rents on the property shortly before this, about the 4th or 5th of April, and plaintiff showed him that he was receiving $93 per month as rental.  The evidence shows that the actual rental being received by plaintiff at the time this contract was made, as known by his tenants, and his agent, Parker, was $75 per month; but plaintiff, while not materially questioning this, claims he was not getting the full rental value of the property and that upon a fair estimate of its rental value, it was more than $95 per month.

Plaintiff admits, and the uncontradicted evidence shows, that no ordinance had been passed for the paving of this street, and that the paving of a street does materially enhance the value of property thereon.  A petition had been circulated to the city council, asking for the paving of this street, and it had been largely signed.  The evidence does not show whether it had enough signatures to warrant the passage of an ordinance for its paving.  The evidence does show that the residents on a number of other streets had filed similar petitions and that in the opinion of the street commissioner, who made recommendations and whose recommendations were usually acted upon, this street would not be the next one to be paved.

The undisputed evidence also shows that the Southern Railway authorities had not decided to move the shops which are now situated in front of this residence. Plaintiff claims that he based his statement in this regard upon rumors, and offers evidence of such rumors. Each of these statements contained in the paper writing is a positive statement of an existing fact, and the plaintiff himself says it was made to enhance the value of the property and to sell it by.

As to the alleged limitations of the authority of the plaintiff's agents in making representations, in order to effect the sale of the land, the law, as we understand it, is that such limitations on the authority of the agents within the general scope of his duties, is not binding upon, and does not affect, a third party, in this case, the defendant, unless such limitations are brought home to the knowledge of such party, and there is no evidence in the case tending to show knowledge on the part of the defendant of limitations of the authority of plaintiff's agents. *Lowry* v. *R. R. Co.*, 92 S. C. 42-3, 75 S. E. 397; *Whaley* v. *Duncan*, 47 S. C. 147, 25 S. E. 54; *Hiller* v. *Bank*, 96 S. C. 74, 79 S. E. 902.

The Court is of the opinion that the said statements are material, and even if not material, it does not lie in the mouth of the plaintiff to say either that they are not material or that the defendant ought not to have believed or relied upon them. In the language of the Supreme Court of the United States, in *Claflin* v. *Ins. Co.*, 110 U. S. 95, 3 Sup. Ct. 507, "No one can be permitted to say in respect to his own statements upon a material matter that he did not expect to be believed." *Nalt. Bk.* v. *Kershaw Oil Mill*, 202 Fed. 90, 120 C. C. A. 365.

It is not material in our opinion as to whether these statements were knowingly false, or made without any knowledge as to their truth or falsity or by mistake, for in any event the party making them is responsible therefor,

and if they turn out to be false in fact, it is fraud in law. *Claflin* v. *Commonwealth Ins. Co., supra; Monroe* v. *Gardner,* 5 S. C. L. (3 Brev.) 31, 5 Am. Dec. 532; *Nash* v. *Company,* 163 Mass. 574, 47 Am. St. Rep. 493.

The right of specific performance either in behalf of the vendor or vendee is not an absolute right, but rests in the judicial discretion of the Court to be exercised according to the settled principles of equity and always with reference to the facts of the particular case. *Davenport* v. *Latimer,* 53 S. C. 572, 31 S. E. 297; *Midland Timber Co.* v. *Prettyman,* 93 S. C. 16, 75 S. E. 1012; *Holley* v. *Anness,* 41 S. C. 354-5, 19 S. E. 646; *Pope Mfg. Co.* v. *Gormully,* 144 U. S. 237-8, 36 L. Ed. 419, 12 Sup. Ct. 637.

It has been suggested that the case of *Holley* v. *Anness* has been overruled by the decision of the Supreme Court in *Hammond* v. *Foreman,* 48 S. C., pages 178-9, 26 S. E. 212. An examination of the Hammond case will show that the Justice who delivered the opinion did not overrule the *Holley* v. *Anness* case, or in anywise touch upon the principle for which it is cited above. And an examination of the case of *Midland Timber Co.* v. *Prettyman,* 93 S. C. 16, 75 S. E. 1012, and the case of *Marthison* v. *McCutcheon,* 84 S. C. 256, 66 S. E. 120, will show that both of them recognize, refer to and approve the doctrine above announced, and the case of *Holley* v. *Anness* in express terms. The principle announced in all of these cases is that before the Court will enforce specific performance, "the contract must be certain, and upon a valuable consideration; it must be perfectly fair in all its parts, free from any misrepresentation or misapprehension, fraud, or mistake, imposition or surprise." And that the Court will refuse to enforce a contract "where it appears that the contract sought to be enforced does not express the true agreement of the parties, either by reason of fraud, accident or mistake."

Another principle of equity equally as well settled is "where one of two innocent parties must suffer by the fraud or wrong of a third person, the loss should fall on him who enables said third person to commit the fraud or other wrong." *Natl. Bk.* v. *Kershaw Oil Mill, supra,* and authorities there cited.

Under these settled rules of the Court of equity for such cases in view of the evidence offered herein, we are of the opinion that this is one of the cases which the Court will not require to be performed specifically. The language in some of the cases cited above may almost be applied to this case. It may be that the defendant made a mistake in signing the contract before he had made proper inquiry and that he should have ascertained from first hand the truth of these statements before signing the contract. But the plaintiff cannot claim laches or negligence on the part of the defendant, when he furnished the statements which misled the defendant.

It is said that the defendant was a shrewd, experienced real estate trader. A careful examination of the evidence shows that he had bought and sold three or four pieces of property in the city of Columbia, upon which he had made some supposed profit, but the profit was tied up in, and represented by, mortgages on the property. His profession from which he derives his support and income was, and is, the practice of dentistry.

But a further reason for the refusal to decree specific performance in this case lies in the fact that the undisputed evidence shows that at the time of the making of the contract and at the time plaintiff offered to carry it out, there existed on the property three valid mortgages, securing debts to the amount of $9,500 of principal, besides accumulated interest, as to which latter there was no evidence. All of these mortgages were past due and payable. There is no mention made of them in the contract, and the defendant testified that the first time he had any intimation

of them was a statement by Mr. Belser, attorney for both parties, early in April when he was arranging to comply, that Mr. Mobley could not comply the first time because he had not made arrangements as to some bond or bonds. The plaintiff offers the testimony of himself, and of the witness, Belser, that they had arranged to have these mortgages taken up; but nothing beyond these general statements is offered to the Court to show how this was to be carried out.

The plaintiff has alleged in his complaint his willingness and his ability and his tender of full compliance with all the conditions of the agreement, and this it put in issue by the answer. Plaintiff offers in support of this allegation the deed which he had executed and tendered to the defendant. This deed contains on it no release of any of these encumbrances, and no other paper has been offered tending to show that any such release was made or being made. What the arrangements were for releasing these mortgages, the plaintiff does not give any definite information as to. It is certain that the amount of cash to be paid was not sufficient to pay off these mortgages. But it is said that the defendant waived performance of this condition by refusal to comply when the deed was tendered in May. This is not an action for damages for breach of contract, in which such suggestion might be material; but is an action in which the plaintiff seeks to hold the defendant for the specific purchase of land under the contract set out in the complaint, and undertakes to show, as he must, that he is complying fully on his part. In such case, he must both allege and show to the Court such facts as would enable it to see definitely that he can carry out his contract. *Prothro* v. *Smith,* 27 S. C. Eq. (6 Rich. Eq.) 332; *Alexander* v. *Herndon,* 84 S. C. 186, 65 S. E. 1048; *Farm Land Co.* v. *Roseman,* 93 S. C. 351, 76 S. E. 979.

The plaintiff has set out a contract to convey a title with full warranty and "free from encumbrances." Even if he

had not set out and proved this specific provision of the contract, the law would imply a contract to make such a title free from encumbrances, and the existence of mortgages on the property is sufficient excuse for nonperformance on the part of the vendee. *Prothro* v. *Smith,* 27 S. C. Eq. (6 Rich. Eq.) 333; *Gallamore* v. *Grub,* 72 S. E. 629, 156 N. C. 575; *Alexander* v. *Herndon,* 84 S. C. 186, 65 S. E. 1048.

For these reasons, the Court is of the opinion, and so adjudges, that the plaintiff is not entitled to the relief prayed for and that his bill herein be dismissed with costs.

*Mr. Frank G. Tompkins,* for appellant, submits as to: *Doctrine of caveat emptor:* 100 N. C. 338; 66 N. C. 233; 69 S. C. 87; 2 Strob. Eq. 153; 9 S. C. 35; 9 Cyc. 428; 125 U. S. 247; 37 L. R. A. 597; 30 L. R. A. (N. S.) 873. *As to specific performance:* Richardson's Cas. 235; 57 S. C. 133.

*Mr. D. W. Robinson,* for respondent: *As to limitations of agent's authority:* 96 S. C. 82; 47 S. C. 147; 92 S. C. 43; 31 Cyc. 1644. *As to materiality of misrepresentation:* 93 S. C. 16; 84 S. C. 656; 53 S. C. 572; 144 U. S. 237; 6 L. R. A. (N. S.) 588-590; 128 U. S. 442; 41 S. C. 354; 95 Pac. 898; 17 L. R. A. (N. S.) 430. *Estoppel of plaintiff:* 110 U. S. 81; 89 S. C. 418; 85 S. C. 540; 120 C. C. A. 365; 202 Fed. 90; 41 S. C. 355; 68 S. E. 19; 152 N. C. 604. *Duty of vendor to remove encumbrances:* 57 S. C. 133; 6 Rich. Eq. 332; 72 S. E. 628; 99 S. C. 88; *Ib.* 117; 89 S. C. 584. *Distinguishes:* 100 N. C. 338; 66 N. C. 233; 69 S. C. 87; 2 Strob. 153; 9 S. C. 20; 9 Cyc. 428, 430; 125 U. S. 245; 13 Peters 26; 37 L. R. A. 597; 15 Fed. 365; 30 L. R. A. (N. S.) 872; Rich. Eq. Cas. 235.

April 10, 1915.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This was an action by plaintiff against the defendant for the purpose of enforcing specific performance of a contract to purchase a piece of real estate in the city of Columbia. After issue joined the cause was referred to A. D. McFadden, Esq., master, to take the testimony and report the same to the Court without any finding or recommendation on his part. Upon coming in of this report the case was heard at the Spring term of the Court for Richland county, 1914, by his Honor, Judge Prince, who filed his decree on July 17, 1914, by which he denied the plaintiff the relief prayed for, and dismissed the complaint. By Judge Prince's decree the facts are fully set forth and his decree should be reported in the case. From this decree the plaintiff appealed after entry of judgment and seeks reversal by fourteen exceptions. He complains of error on the part of his Honor in his findings of facts and conclusions of law, and in not granting the relief asked for by the plaintiff in the case.

We will not attempt to take up each exception separately. The contract was entered into by the parties. The defendant refused to comply and accept the deed which was tendered him by the plaintiff, upon the ground that the plaintiff had induced the defendant to enter into the contract by material misrepresentations contained in the paper in the evidence, marked exhibit "Y," as to the rental value of the property, as to an ordinance having been passed for the paving of the street in front of the property sought to be sold and as to the removal of the Southern Railway shops in front of the property.

Defendant also took the position that he had contracted for a title in fee "free from encumbrances" and that the property was encumbered at the time the plaintiff undertook to convey it by three separate mortgages, all past due, and plaintiff did not tender any title free from encumbrances or any indemnity against them. It appears from the evidence in the case that the plaintiff some time previous to the execution of the contract in question had been

endeavoring to sell the property, that he lived in Fairfield county, that the property is one acre of land, situate in the city of Columbia, on Blanding street, and has on it one fourteen-room house, one store, one set of rooms back of the store, and two small negro dwellings, and part of the lot unoccupied by any of the buildings and being used by one of the tenants for garden purposes. J. T. Reese, a real estate agent of Columbia, offered to sell the property to the defendant, but defendant declined to buy it. Later on Kelly, another real estate agent, had the property for sale and had a plat made of the same, and about that time submitted to the defendant a statement that the plaintiff had prepared, but had not signed, setting out the different features and advantages of the property; this statement was typewritten and contained thirteen statements and was long prior to the time that it was put in the hands of the Keenan Agency for sale. Later on the plaintiff, who had been asking $25,000, placed the property with the Keenan Agency to sell for $22,000, and gave them the plat and list of statements with regard to the property, with the explanation to them that the statement in regard to paving the street and removal of the railway shops were mere rumors. The evidence shows that the property was reasonably worth the price it was listed for sale. A member of the Keenan Agency went to the defendant and showed him the statement of plaintiff, but told defendant that Mobley did not in any manner guarantee the same. It does not appear by any evidence in the case that the defendant made any inquiries or attached any importance to the statements of plaintiff prior to the bringing of this suit.

The defendant signed the contract in question, and after defendant had signed it, it was carried to plaintiff by the Keenan Agency and signed by plaintiff, and the defendant immediately listed it with W. A. Keenan, another member of the Keenan Agency, for sale at a profit of $5,000, Keenan telling the defendant that he believed he could sell

it at that advance price before the time expired between making the contract and the time to comply, which statements were made before defendant signed the contract with plaintiff, and actuated the defendant in buying. Keenan, as agent for defendant, used the same statement (exhibit "Y" in evidence) in endeavoring to sell the property for the defendant up to the time defendant refused to comply with his contract with plaintiff, more than thirty days. There was convincing evidence that the defendant wanted the property not for the buildings on it, but bought it for the number of front feet it contained. That the defendant lived in the city of Columbia, and according to all the evidence in the case of real estate agents and business men that he was an extensive operator in real estate, and had bought and sold numerous pieces of real estate property and was a wide-awake, shrewd real estate operator, making careful investigations and keeping well informed as to prices and changes in value as to real estate in Columbia, and that he owned a house and lot on Blanding street, and had lived in it for years, and, along with other citizens, a year or more before this transaction, and before he moved off of this street, signed a petition, which petition had a sufficient number of signers to warrant the city in having this street paved. It is in evidence that the firm of Messrs. Melton & Belser were attorneys of both plaintiff and defendant in arranging the details of the transaction, both in the examination of the titles and financing the matter for the plaintiff, and when the time arrived to close the transaction defendant refused to comply on the grounds that the property did not rent for as much as $95 per month. At that time no question was raised as to the paving or removal of the railroad shops; plaintiff thereupon made his offer in writing to defendant's attorney, who was also his attorney, to guarantee the rents set out in statement, which proposition was submitted to, and refused by, the defendant. On the date provided for in the contract

plaintiff tendered the defendant a deed of the property in question and demanded a compliance of contract on part of defendant. Defendant refused to comply and notified plaintiff that at no time did he intend to comply; and gave as his only reason at that time as his refusal for comply-ing that he found the plaintiff was paying the water rate, which reduced the rent. No complaint was made until the bringing of this suit that the rents were not as represented. It was in evidence that in the spring of 1913, about the time of the transaction, that there was a considerable change in the money markets of the city of Columbia, owing to Federal legislation in reference to currency, and by reason thereof, property was not at that time as salable and in as much demand as it had been previous to that time. It also appears in evidence that after the contract between plaintiff and defendant was signed, and after defendant had placed it with Keenan for sale, the defendant made a proposition to take it up before the sixty days were out, if plaintiff would make a cash discount, and wanted plaintiff to fix it up before the sixty days expired, and offered plaintiff a consideration therefor.

We think his Honor was in error in finding as he did in his decree that the unsigned paper writing was a positive statement of an existing fact; it was no more than an advertisement, and the defendant could have by proper care and inquiry got the truth upon investi-gating as to the paving of streets and removal of shops. Upon investigating what ordinances had been passed by the city council he could have found out about the paving of the streets, and throughout the whole case there is nothing to show that Mobley made any representa-tions that were calculated to mislead or deceive the defend-ant to his injury. The defendant made no effort to verify any of the rumors or statements that he claimed were made, there was no fraudulent representation made by Mobley or nothing that could be strained or distorted into such, but

on the contrary, the overwhelming testimony is that in his dealings and statements he was frank and fair and that the defendant was an extensive real estate operator who had bought and sold extensively, a shrewd, bright trader and perfectly competent to take care of himself. Plaintiff made no statements, either by mistake on his part or by concealment of things within his knowledge or false statements, that defendant could rely on to avoid the contract solemnly made.

In *Anderson* v. *Rainey*, 100 N. C. 338, 5 S. E. 182, it is held: "If in a contract for the purchase of land a party fails to avail himself of those sources of information readily within his reach, and chooses to rely upon representations, which, though not true, were not made with any false and fraudulent intent, the maxim of *caveat emptor* applies, as it does to personal property, and Courts will not aid the purchaser. *Walsh* v. *Hall*, 66 N. C. 233."

The case of *Cape Fear Lumber Company* v. *Matheson*, 69 S. C. 87, 48 S. E. 111, discusses this question quite fully, and lays down the following principles as governing on questions of this kind: "That parties occupied no fiduciary relation to each other, they were dealing at arm's length, and were fully competent to contract. They had every opportunity of knowing the contents of the option signed by the defendant, and of understanding what it should have contained and did not contain. There is no evidence of any concealment on the part of Mitchell, the agent of the plaintiff. The burden of proof to show mistake is upon the appellant, and we think that he has not shown, by the preponderance of the evidence, such a state of facts as would entitle him to the equity that he seeks to invoke in this cause."

In *Murrell* v. *Murrell*, 21 S. C. Eq. (2 Strob. Equity) 153, the Court uses the following language: "If parties come to a settlement, and will not see their rights in their true character, or use proper diligence in ascertaining them,

or, perceiving their rights, think proper by their silence to waive them, there is no reason why this Court or any other should be called upon to protect them from the consequences of their own default or folly. There are but few settlements or accountings in which, by a searching scrutiny, some errors or omissions might not be detected, and this Court will not open them, when by proper vigilance they might have been guarded against, and unless some of the circumstances above adverted to as affording grounds for relief are alleged and proved. A party fully competent to protect himself under no disability, advised as to all circumstances by which he might by due diligence be so advised, not overreached by fraud, concealment or misrepresentation, nor the victim of a mistake against which prudence might have guarded, has no right to call upon the Courts of justice to protect him against the consequences of his own carelessness, and to disturb the peace of the society by his clamors for that justice which he voluntarily or negligently surrendered."

In the case of *Montgomery* v. *Scott,* 9 S. C. 35, Chief Justice McIver, in writing the opinion of the Court, cites with approval Story's Equity, section 200: "If he does not avail himself of the knowledge or means of knowledge open to himself or his agents, he cannot be heard to say that he was deceived by the vendor's misrepresentations. * * * It is his own folly and laches not to use the means of knowledge within his reach, and he may properly impute any loss or injury in such a case to his own knowledge or indiscretion. Courts of equity do not sit for the purpose of relieving parties, under ordinary circumstances, who refuse to exercise a reasonable diligence or discretion." The learned Chief Justice says with regard thereto: "This rule, which has received the sanction of this eminent text writer, as well as Courts of the highest authority, is but the expression of a natural feeling of equity which would prompt any just man to say that where one comes into a Court of

equity and asks, against an innocent party, the interposition of its extraordinary powers, to protect him from danger or loss occasioned by the fraud of a third party, he ought to be required to show that he has in no way, either by his misconduct or negligence, contributed to the perpetration of the fraud, from the consequences of which he seeks to be relieved at the expense of such innocent party."

The evidence satisfies us that the plaintiff stated positively and fully to the agents, that the statements in the papers were only rumors, and the defendant should have investigated, and he had no right to rely on them, as he claims that he did.

As to the finding of the Judge that the plaintiff could not comply and give title by reason of the fact there were encumbrances on the property for over $9,000, and for this reason specific performance would not be decreed, the evidence abundantly shows that the plaintiff had arranged, and at the time was prepared to remove these encumbrances, and give to the defendant a clear, free, and unencumbered title in fee simple.

We are of the opinion that the defendant attempted to get out of what he considered a poor trade, and that under all of the evidence in the case he should not be allowed to do so, and that the Circuit Judge was in error in his findings and decree, and that the exceptions should be sustained and judgment reversed, and that under the facts proven that the plaintiff is entitled to a decree for specific performance, and that the case be remanded to the Circuit Court for the purpose of carrying out this judgment.

Reversed and remanded.