0211

James Donald KING, Respondent, v. Mary D. OXFORD, Appellant.
(318 S. E. (2d) 125)

Court of Appeals

*A. Camden Lewis* of *Austin & Lewis*, Columbia, *for appellant.*

*William N. Epps, Jr.,* and *Steven M. Krause,* Anderson, *for respondent.*

Heard Jan. 25, 1984.

Decided June 25, 1984.

BELL, Judge:

In this action James Donald King seeks specific performance of a contract for the sale of a business corporation wholly owned by Mary D. Oxford. The circuit court dismissed Oxford's counterclaim for fraud on a motion for summary judgment. After trial on the remaining issues, the court decreed specific performance, but retained jurisdiction to determine the value of the corporation in the event the parties waived their contractual right to arbitration.[1] We affirm the dismissal of Oxford's counterclaim, but vacate the decree of specific performance and remand for further proceedings.

The main issue in the case is what price King should pay Oxford for her 100% ownership interest in Oxford Oil Co., Inc. From the spring to the early fall of 1979, the parties negotiated a stock sale of Oxford Oil to King. Although they did not agree on a fixed price to be paid for the business, they did agree on a formula to determine the price. King was to pay the difference between the fair market value of the corporation's assets and its liabilities on the date of sale. We shall refer to this differential as the "net asset value" of the corporation.

Oxford transferred possession of the business to King on October 31, 1979. However, the parties did not execute a written contract until November 29, 1979. After King took possession of the business, the parties could not agree on its net asset value. King contends that on October 31, 1979, corporate liabilities exceeded assets. On this basis, he claims he owes Oxford nothing for the corporate stock. Oxford, on the other hand, refuses to transfer the stock to King unless she receives substantial compensation under the contract. As a result, King brought suit for specific performance of the contract, seeking to compel transfer of the stock. Oxford counterclaimed for rescission of the sale on the grounds of fraud and mistake.

I.

Oxford asserts that if the corporation has a negative net asset value, King made fraudulent misrepresentations to her

---

[1] We find that both parties waived arbitration at the commencement of the suit.

during negotiations for the sale. She claims that both King and the parties' mutual attorney assured her she would receive between $75,000 and $100,000 from the sale and says she would not have signed the contract without these assurances. Since King now maintains the corporation is worth nothing, Oxford argues the contract should be rescinded for fraud.

Fraud is not presumed; it must be established by clear, cogent, and convincing evidence. *Griggs v. Griggs*, 199 S. C. 295, 19 S. E. (2d) 477 (1942); *Jones v. Cooper*, 234 S. C. 477, 109 S. E. (2d) 5 (1959). In order to prove fraud, the following elements must be shown: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; (9) the hearer's consequent and proximate injury. Failure to prove any one of these elements is fatal. *O'Shields v. Southern Fountain Mobile Homes, Inc.*, 262 S. C. 276, 204 S. E. (2d) 50 (1974).

The evidence Oxford relied on at summary judgment was insufficient, as a matter of law, to establish several of the necessary elements of fraud. However, we need only address her failure to show she had a right to rely on the alleged misrepresentations. The absence of this element alone was enough to defeat her claim at summary judgment.

On the evidence before it, the circuit court correctly found that no confidential or fiduciary relationship existed between Oxford and King when they entered the contract. The sale of the corporation was an arm's length transaction. Oxford is a mature woman with a college education who was able to run the business from 1973 to 1979. She negotiated the contract, retained a lawyer to draft it, and had several days to study it before she signed it. The contract contained no representations as to the minimum amount Oxford would realize from the sale. Indeed, the price term in the contract shows that both parties were acutely aware the net asset value of the corporation was uncertain.

If estimates of value were made during the negotiations, they fall far short of fraud in the inducement. King or his agents relied on a balance sheet supplied by Oxford to estimate the value of the business. Denny Cole, a certified public

accountant for Oxford Oil, testified that since his employment with the corporation in 1975, Oxford Oil had never filed audited financial statements. The unaudited information on the corporation's financial statements was supplied each month by Oxford or her bookkeeper. If that information was inadequate or inaccurate, Oxford can hardly blame King for its deficiencies. Of all those privy to the transaction, Oxford had the best access to the facts needed to make an accurate valuation of the business. If she was deceived as to its value, the problem lies in her own lack of due diligence, not in any estimates King might have made.

An argument similar to Oxford's was made in *Williams v. Bruce*, 110 S. C. 421, 96 S. E. 905 (1918). In that case a seller conveyed a stand of timber for $500, based on the buyer's alleged representation that $500 was its fair market value. When a third party sued the seller for the timber, allegedly worth $3,250, the seller sought damages from the buyer for fraud. The court held the seller's lack of diligence in ascertaining the value of his own timber precluded recovery for fraud. This is but one example of the often stated principle that "one cannot rely upon misstatement of facts, if the truth is easily within his reach." *Flowers v. Price*, 190 S. C. 392, 396, 3 S. E. (2d) 38, 39 (1939); *O'Shields v. Southern Fountain Mobile Homes, Inc., supra; accord, Mobley v. Quattlebaum*, 101 S. C. 221, 85 S. E. 585 (1915); *J. B. Colt Co. v. Britt*, 129 S. C. 226, 123 S. E. 845 (1924).

It is the policy of the courts not only to discourage fraud, but also to discourage negligence and inattention to one's own interests. *Torres v. State Farm Fire & Casualty Co.*, 438 So. (2d) 757 (Ala. 1983). Courts do not sit for the purpose of relieving parties who refuse to exercise reasonable diligence or discretion to protect their own interests. *Mobley v. Quattlebaum, supra.* A party must avail himself of the knowledge or means of knowledge open to him. *Id.* The court will not protect the person who, with full opportunity to do so, will not protect himself. *J. B. Colt Co. v. Britt, supra.*

II.

As an additional ground for rescission, Oxford argues she entered the contract under a mistake as to the value of the corporation.

A contract may be rescinded for mistake, if justice so requires, in the following circumstances: (1) where the mistake is mutual and is in reference to the facts or supposed facts upon which the contract is based; (2) where the mistake is mutual and consists in the omission or insertion of some material element affecting the subject matter or the terms and stipulations of the contract, inconsistent with the true agreement of the parties; (3) where the mistake is unilateral and has been induced by the fraud, deceit, misrepresentation, concealment, or imposition of the party opposed to the rescission, without negligence on the part of the party claiming rescission; or (4) where the mistake is unilateral and is accompanied by very strong and extraordinary circumstances which would make it a great wrong to enforce the agreement, sustained by competent evidence of the clearest kind, *Jumper v. Queen Mab Lumber Co.*, 115 S. C. 452, 106 S. E. 473 (1921).

Since the value of the corporation has not yet been determined, there is no factual basis for assessing Oxford's claim that the contract was entered under a mistake as to value. Assuming, however, that the corporation has a negative net asset value, we find no basis for rescission on a theory of mistake.

For the reasons stated above, Oxford has not persuaded us that she acted under a mistake induced by fraud, misrepresentation, concealment, or imposition on the part of King. In the absence of fraud which would justify shifting the loss to the party who opposes rescission, rescission is appropriate only if both parties can be returned to the status quo prior to the contract. *Rice and Santos, Inc. v. Jones*, 279 S. C. 201, 305 S. E. (2d) 74 (1983); *Hester v. New Amsterdam Casualty Co.*, 268 F. Supp. 623 (D.S.C. 1967).

In this case, the status quo ante cannot be restored. After the business was transferred to him, King personally assumed certain liabilities of Oxford Oil Co., Inc. In order to continue the business, he obtained and delivered to Shell Oil Company a $100,000 letter of credit. He also obtained a loan of $45,000 dollars for Oxford Oil. Since November of 1979 King has run the business, investing his own time and money in its operation. King has suffered a definite and substantial change of position in reliance on the

contract. The circuit court found that rescission of the contract would subject King to liability to Oxford and to third parties because of business arrangements he has made on behalf of Oxford Oil. It is apparent that Oxford cannot now return King to his status prior to the contract. In these circumstances, King would be materially prejudiced by a rescission of the contract. Because Oxford cannot, as a practical matter, restore King to his former position, we hold she is not equitably entitled to a rescission on the ground of mistake.

### III.

Finding no basis for rescission of the contract, we now consider Oxford's claim that the circuit court erred in granting specific performance to King. We conclude the decree of specific performance was prematurely granted, because the circuit court failed first to determine the net asset value of the corporation.

Specific performance is an equitable remedy. A plaintiff must show more than the mere existence of a valid contract to be entitled to specific performance. The court should grant specific performance only if there is no adequate remedy at law and specific enforcement of the contract is equitable between the parties. *Monteith v. Harby*, 190 S. C. 453, 3 S. E. (2d) 250 (1939); *Holley v. Anness*, 41 S. C. 349, 19 S. E. 646 (1894). Until the net asset value of the corporation is ascertained, there is no factual basis on which to decide the equities of granting specific performance in this case. It is not evident from the record that equity would be done by compelling Oxford to transfer the corporate stock without receiving a cash price for it.

To be susceptible of specific performance, a contract must not be infected by fraud, accident, or mistake. *Masonic Temple v. Ebert*, 199 S. C. 5, 18 S. E. (2d) 584 (1942). Even though a flaw in the bargaining process is not grievous enough to warrant rescission of a contract, it may taint the contract sufficiently to justify a refusal of specific performance. *Id.; Holley v. Anness, supra; Gasque v. Small*, 21 S. C. Eq. (2 Strob. Eq.) 72 (1848); *Barksdale v. Payne*, 12 S. C. Eq. (Riley's Eq.) 174 (1837). If a contract is so tainted, equity may refer the aggrieved party to his remedy at law in

damages. *Holley v. Anness, supra; Gasque v. Small, supra.*

Oxford argues that mistake runs to the root of this contract. She testified that since the business provided her livelihood, she would not have sold it without assurance she would receive a price of at $75,000. King testified that he did not know how much the business was worth at the time he signed the contract. He says he expected to pay between zero and $100,000 for it. He admits that the April 1979 balance sheet showed a stockholder equity of $100,912.

Although King's testimony is equivocal, the provisions of the contract support Oxford's contention that the parties based their agreement on the assumption that the corporation had a substantial, positive net asset value. The contract provides that 25% of the purchase price is to be paid on the date of sale and that the balance is to be paid in 120 monthly installments. It also provides that the purchase price will be secured by the corporate stock, and it creates an escrow arrangement for voting the stock. These provisions would be unnecessary if the parties knew the corporation had a nominal or negative net asset value. They convince us that the parties contracted on the basis that the corporation had a substantial, positive net worth.

King now contends that the corporation's liabilities exceeded its assets on the date of sale. If King's assertion is true, the parties based their bargain on a mistake of fact of sufficient magnitude to justify a denial of specific performance. However, since the circuit court made no finding as to the value of the corporation, neither we nor that court have a factual predicate from which to decide whether specific performance should be granted or denied. If the corporation has a substantial, positive net asset value, specific performance may be an appropriate remedy. On the other hand, if the corporation has a nominal or negative value, then the contract was based on a mistake and specific performance should be denied.

In the event specific performance is denied, King may still pursue his remedy of damages for breach of contract. *Welling v. Crosland,* 129 S. C. 127, 123 S. E. 766 (1924). The measure of damages for breach of contract is the amount necessary to put King in the same position as if the contract had been fulfilled. *Jones v. Bates,* 241 S. C. 189, 127

S. E. (2d) 618 (1962). If Oxford Oil, Inc. was worthless on the date of sale, King would not suffer any expectancy damages from Oxford's refusal to tender the stock to him. He may, however, have suffered natural, direct, and proximate damages by acting in reliance on the contract. These he would be permitted to recover. *Id.* King's recovery would be limited to those damages which are not speculative or conjectural, and any damages awarded must take into account the benefits received by King during the time he possessed the business. *See Higgins Construction Co., Inc. v. Southern Bell Telephone & Telegraph Co.*, 276 S. C. 663, 281 S. E. (2d) 469 (1981).

Because the circuit court ordered specific performance without first determining the net asset value of the corporation, we vacate the decree of specific performance and remand for further proceedings.

## IV.

In the written contract of sale, Oxford also agreed to lease to King, at his option, premises known as Keowee Kwik. These premises consist of a filling station outlet in Seneca, South Carolina. The orginal term of the lease was for ten years with an option to extend the term for two additional periods of five years each. A fixed monthly rental was stated for the original and extended terms. In addition, the lease contained the following option to purchase the premises: "Vendor [Oxford] shall grant Purchaser [King] or Corporation [Oxford Oil Co., Inc.] option to purchase premises for a purchase price of $_____ cash with closing costs to be apportioned according to custom in Oconee County."

Oxford contends the lease clause is unenforceable because the parties never agreed on the terms of the lease. Since the lease specifies a definite term at a fixed rental, this contention is frivolous. The failure of the parties to express a date certain by which the option to lease must be exercised is not fatal. Where the parties to an option contract do not specify a time for performance, a reasonable time will be implied. *Lindler v. Adcock*, 250 S. C. 383, 158 S. E. (2d) 192 (1967). Reading the contract between King and Oxford as a whole, we find an implied agreement that the option to lease could be exercised at any time up to the date of closing. We also hold that this would be a reasonable time within which to exercise the option to lease.

Oxford's contention that the lease fails because the parties did not name a definite purchase price in the option to purchase is likewise unpersuasive. The option to purchase was neither an essential nor a material term of the lease. *See B-L-S Construction Co., Inc. v. St, Stephen Knitwear, Inc.*, 276 S. C. 612, 281 S. E. (2d) 129 (1981). The policy underlying the requirement of certainty in contracts is to ensure that the parties intended to conclude a binding agreement and to provide the court a reasonably certain basis for granting a remedy. Restatement (Second) of Contracts § 331 comments a. and b. (1981). Here the essential terms of the lease were agreed to and are capable of enforcement by the courts. Since King has not yet attempted to exercise the option to purchase the leased premises, and may never do so, the question of the validity of that option is not ripe for decision. In any case, the issue is not squarely presented by Oxford's exception, which refers only to the validity of the lease.

For the reasons stated, the judgment of the circuit court denying relief on Oxford's counterclaims and upholding the validity of the lease is affirmed. The decree of specific performance is vacated and the cause remanded for further proceedings consistent with this opinion. In view of this disposition, we find it unnecessary to address Oxford's remaining exceptions.

Affirmed in part; vacated in part and remanded.

SANDERS, C. J., and SHAW, J., concur.