7677

## ILER v. JENNINGS.

WARRANTY—CORPORATIONS.—Any direct representations made by a director of a corporation as to its financial status with a view of inducing a stranger to buy his capital stock of the corporation and acted upon by the buyer, whether the seller actually knew the facts were as represented or not, is an express warranty. Under the evidence here it was error to instruct the jury if they "believe from the evidence that the defendant merely stated that the books of the company showed that condition, their verdict must be for defendant."

Before C. C. FEATHERSTONE, Special Judge, Greenwood, April, 1909.   Reversed.

Action by A. S. Iler against J. P. Jennings.   From judgment for defendant, plaintiff appeals.

*Messrs. Greer & Park,* for appellant, cite: *Statements of the director constitute a warranty:* 39 S. C., 51; 44 S. C., 64; 45 S. C., 471; 48 S. C., 83; 53 S. C., 528; 60 S. C., 184; 66 S. C., 100; 74 S. C., 473; 82 S. C., 382; 65 Am. St. R., 699; 54 Id., 730; 79 Ia., 678; 118 N. Y., 365; 85 Am. St. R., 365; 8 Id., 592; 36 Id., 586; 18 Id., 485; 1 Boles on Bank., 375; 8 C. C. C. A., 444; Thomp. on Cor., sec. 1450; 2 Cook on Corp., sec. 352.   *There is no implied warranty in sale of corporate stock:* 44 S. C., 533; 18 L. R. A. (N. S.), 379; 7 Id., 646; 81 Am. Dec., 57; 22 L. R. A., 512; 80 S. C., 299; 2 Bay, 11; 12 S. C., 590; 7 S. C., 58; 2 Speer. L., 9; Harp. L., 441; 15 S. C., 126; 13 S. C., 203; 41 S. C., 508.   *Defendant need not warrant correctness of statement:* 36 Am. St. R., 586.   *Where means of information are not equal, any expression of opinion of value of stock is a warranty:* 50 S. C., 402.

*Messrs. Tillman & Watson, Cothran, Dean & Cothran,* contra, cite: *The appellants' position is at best a case of implied warranty:* 30 Ency., 135; 122 U. S., 581; 11 S. C., 337; 80 S. C., 292.   *In an action upon an express warranty a recovery cannot be had on an implied warranty:* 2 McC., 167; 43 N. W., 99; 60 L. R. A., 311.   *Appellants' case does not make an implied warranty:* 44 S. C., 533; 1 Strob., 232; 72 S. C., 309; 80 S. C., 300; 30 Ency., 139; 62 S. E., 1076; 10 Cyc., 844; 21 Ency., 880; 1 Cook, sec. 355; 21 Ency., 896; 110 U. S., 7; 21 Ency., 895; 55 N. Y., 400; 53 S. C., 519; 12 Am. St., 488; 24 Am. St., 625; 10 Am. R., 551.

October 3, 1910.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. This suit was brought ·to recover damages for breach of warranty in the sale by defendant to plaintiff of thirty-five shares of the capital stock of the Gambrell Hardware Company, and was tried before Hon. C. C. Featherstone, special Judge and a jury, at Greenwood, S. C., resulting in a verdict for defendant.

The complaint alleged substantially that on the 26th day of October 1907 and prior thereto the defendant, Jennings, was a director in the Gambrell Hardware Company, a corporation under the laws of this State and doing business at Greenwood, S. C., and was actively employed in the business.

That on October 26, 1907 plaintiff purchased of defendant thirty shares of the capital stock of the Gambrell Hardware Company of the par value of one hundred dollars per share, paying therefor thirty-nine hundred dollars. That at the time of said purchase defendant represented to plaintiff that the assets of the corporation on April 1, 1907 were as follows:

Accounts due $4,418.39; Farmers Warehouse stock $100.00; cash on hand $87.51; merchandise stock on hand $24,850.09. Total assets $29,455.99

And its liabilities on that day were as follows:

Capital stock paid in $15,700.00; Farmers and Merchants Bank over draft $752.30; bills payable $5,416.41; due on merchandise $4,490.05; gain net $3,097.23—$29,455.09.

That defendant represented to the plaintiff that the condition of the corporation was better at the time of the negotiation than on April 1, 1907.

The said representations were made for the purpose of effecting a sale of said stock to plaintiff; that plaintiff relied thereon and was thereby induced to purchase and did purchase said stock. That instead of said corporation having a surplus of over three thousand at the time of the purchase as represented, there was a deficit of about six thousand dollars and that said representations were untrue and mis-

leading. That said representations were an "express warranty" by defendant to plaintiff that the condition of the said corporation and its assets and liabilities were as represented. That at the time of said representations defendant was a director in said corporation and actively engaged in the management of its business and knew or ought to have known the condition of said corporation and plaintiff relying upon defendant's means of knowledge and said representations was induced to purchase said stock. That immediately before the purchase and sale of said stock, pending the negotiations for the same, the defendant expressly warranted the value of the stock and the condition of the said corporation. That the conditions of said warranty have been broken and plaintiff has suffered damage on account thereof in the sum of two thousand dollars. That upon discovery that said representations were untrue plaintiff offered to return said stock and demanded a return of the purchase price and that the sale be rescinded and that defendant refused.

One of the questions raised by appellant is as to the nature of the action. We are satisfied with the ruling of the Circuit Court that it is an action upon an express warranty. This is manifest from the language of the complaint. Moreover, the record shows that when the Court inquired of counsel for plaintiff whether the suit was for breach of an express warranty, counsel answered: "Yes, sir; and the misrepresentations of a director in this concern as to the condition of the concern at the time the plaintiff bought the stock—that is actual misrepresentations. We don't charge that Mr. Jennings did it intentionally or wilfully, but we take the position that where a man is in that position—any man—and makes a statement as being true, he must know it is true."

This was not an action based upon fraud or deceit, nor an action upon an implied warranty, and the Court correctly restricted the issues on the trial and in his charge to the case

as one upon an express warranty. Hence all exceptions based upon any other theory of the case are not well taken.

In *Bryce* v. *Parker,* 11 S. C. 337, the Court quotes with approval from 1 Pars. on Contracts 580:

"Any distinct assertion or affirmation of quality made by the owner during a negotiation for the sale of a chattel which it may be supposed was intended to cause the sale and was operative in causing it will be regarded either as implying or constituting a warranty;" and again, "It is certain that the word warrant need not be used, nor any other of precisely the same meaning. It is enough if the words actually used import an undertaking on the part of the owner that the chattel is what it is represented to be or an equivalent to such undertaking."

In *Shippen* v. *Bowen,* 122 U. S. 581, the Supreme Court of the United States declared that "an affirmation of the quality or condition of the thing sold (not uttered as matter of opinion or belief) made by the seller at the time of sale for the purpose of assuring the buyer of the truth of the facts affirmed, and inducing him to make the purchase if so received and relied on by the purchaser is an express warranty." It is a well settled rule that in actions upon an express warranty it is not necessary to allege or prove a *scienter.* Hence in considering this case, if defendant made any direct affirmation as to the quality or condition of stock sold by him, which were untrue, it may be assumed that he was ignorant of the falsity, and honestly believed the statement to be true.

With this preliminary we proceed to consider what we regard the vital questions presented by the exceptions.

The Court instructed the jury: "If Mr. Jennings here did not warrant that stock, if he simply referred Mr. Iler to the bookkeeper to get a statement, and Mr. Iler got that statement and bought upon his own hook, why, Mr. Jennings is not liable for it;" and again in response to defendant's request the Court instructed the jury as follows:

"The plaintiff's action is based upon an alleged express warranty by the defendant that the financial condition of the company at the time the plaintiff bought the stock was as alleged in the complaint. This he must prove to the satisfaction of the jury by the greater weight of the evidence. If the jury believe from the evidence that the defendant merely stated that the books of the company showed that condition, their verdict must be for the defendant."

To which the Court added: "Now you see, gentlemen, right there it comes back to that question of warranty—what were these statements; what did they amount to; were they intended to be a statement that the statement was correct and did Mr. Iler act upon it?"

We do not think this modification or anything in the general charge operated to cure what we regard as erroneous in the instruction:

"If the jury believe from the evidence that the defendant merely stated that the books of the company showed that condition their verdict must be for the defendant."

The plaintiff testified that when he asked defendant about the worth of the stock defendant referred him to the bookkeeper for a statement; that he immediately went to the bookkeeper and received from him the written statement of the assets and liabilities of the corporation (introduced in evidence as Exhibit "A," and showing condition of the corporation to be as the complaint alleged it was represented to be by defendant); that when he received this statement he carried it back to defendant where he was standing at the show case in the store room and that defendant said that the statement showed the true condition of the stock when it was taken and that the business was in better condition than at the time that was taken; that defendant was a director of the corporation and was a clerk working in the store and that he relied upon the statements of Mr. Jennings believing them to be true.

John M. Major, the bookkeeper, who was brother-in-law
to plaintiff, testified that defendant asked him to take plain-
tiff back to the office and show him the statement of the
business; that he gave plaintiff a copy of the statement
(Exhibit "A") and that defendant went back to the front
of the store with the statement and had some conversation
with defendant; that the statement showed the stock to be
worth about 119 at that time.   This witness testified that
Mr. Gambrell, the president, manager and treasurer of the
corporation died about April 1, 1908, and at that time a new
inventory was taken and it was discovered that the stock of
merchandise which was put down as $24,550.09 on April
1, 1907, footed up only $18,651.65, an error of $6,198.44.
This error was the result of mistake or design on the part
of Mr. Gambell who used an adding machine in adding up
the stock inventories.

This witness testified that defendant participated in taking
the stock to the extent only of taking the stock in the
crockery department, as to which no error was found except
in the failure to add in certain items, which diminished to
some extent the statement of stock in that department.   The
fact of the error in stating the amount of the merchandise
stock in April 1, 1907 was also testified to by the expert, J.
R. Nichols who ascertained the error by an examination of
the books of the company, who also stated that the book
value of the stock on April 1, 1907 was 65.96 a share.

Defendant testified that when plaintiff asked him as to the
value of the stock he told him: "Mr. Iler these stock books
will show it is worth about 119; but so far as making a
statement as to what the stock is worth, or anything about
the condition of the business I won't do it; I will refer you
to your brother-in-law, John Major, who is bookkeper and
he can give you more information about it than I can; he
knows more about the business; he has been in here all the
time as bookkeeper and knows the hardware business better
than I do; I don't know anything about it."   "I told him

at the time he could get a statement from Mr. Major and referred him to Mr. Major and I told Mr. Major myself to let Mr. Iler have a statement and any information he wants about the business, he is thinking of buying my stock."

Defendant further testified that when plaintiff came back after applying to Mr. Major he had the statement. When asked whether he stated to plaintiff that the statement he got from Mr. Major was absolutely correct he answered: "I might have done so—the statement was correct so far as taking from the books was concerned. I did not state to him that it was a correct statement of the stock taken. I would not have ventured to do such a thing because I didn't do it all myself. I might have stated to him that was a correct copy of the books. I don't remember even doing that." When asked what he said to plaintiff about the value of the stock defendant replied: "I told him I thought the books would show about 119½, but not to take my word for anything * * * go to your brother-in-law, John Major, and get all the information you want and I will tell him to show you the books and I did so." He testified that at that time he knew nothing of any error in the statement and believed it to be absolutely correct and only learned of the error after the death of Mr. Gambrell. When asked later on if he did not tell plaintiff that the books would show the stock was worth 119 he answered: "My words were I thought the books would show the stock was worth 119. Those are my words exactly."

In view of the foregoing testimony it was harmful error to give the instructions stated above.

The jury may have inferred from the testimony that when defendant referred plaintiff to the bookkeeper of the corporation of which defendant was director and salesman, he intended and expected that the bookkeeper would do as he did, give plaintiff the written statement of the condition of the corporation. A delivery of the statement under such circumstances may well have been considered by the jury

the same as if defendant had delivered it with his own hand in response to plaintiff's inquiry as to the worth of the stock. Such use of a statement of the corporate business by a director negotiating a sale of his stock therein could not be regarded as other than a direct affirmation of its correctness; and if it was delivered for the purpose of assuring the buyer of the truth of the facts therein stated and to induce him to purchase and the buyer purchases in reliance thereon, there is an express warranty.

Having reached the conclusion that there should be a new trial on the above ground, we do not deem it necessary to consider the exceptions based upon the ground that the undisputed facts show that defendant not only caused such written statement to be given to plaintiff but actually affirmed its correctness in words.

The judgment of the Circuit Court is reversed and the cause remanded for a new trial.