## 8371

### ILER v. JENNINGS.

CORPORATIONS—WARRANTY OF VALUE OF STOCK.—The evidence in this case is susceptible of only one inference, that the statement of the value of a corporation's assets was delivered to a prospective purchaser of stock by a director and stockholder for the purpose of assuring him of the truth of the facts therein contained and to induce him to purchase his stock, and that he did buy the stock in reliance thereon.

Before GAGE, J., Greenwood, September, 1911. Affirmed.

Action by A. S. Iler against J. P. Jennings. Defendant appeals.

*Messrs. Tillman & Mays* and *Cothran, Dean & Cothran,* for appellant.

*Messrs. Tillman & Mays* cite: *Whether a statement is a warranty is for the jury:* 35 Cyc. 481. *In an action on an express warranty, recovery cannot be had on an implied warranty:* 2 McC. 167; 43 N. W. 99; 60 L. R. A. 311. *There is no implied warrant in sale of stock:* 44 S. C. 533; 72 S. C. 309; 30 Ency. 139; 62 S. E. 1076. *Representations must have been made with intent to deceive:* 21 Ency. 880, 896, 895; 1 Cook Stock, sec. 355; 110 U. S. 7; 55 N. Y. 400; 53 S. C. 519; 12 Am. St. R. 488; 24 Am. St. R. 625; 10 Am. R. 551.

*Messrs. Cothran, Dean & Cothran* cite: *What is an express warranty?* 122 U. S. 581; 87 S. C. 91. *Whether there was a warranty is for the jury:* 122 S. C. 581; 30 Ency. 141; 8 Blackf. 516; 34 Am. Dec. 497; 18 Vt. 176; 35 Vt. 577; 34 Am. Dec. 108; 9 N. H. 111; 24 N. C. 411; 26 N. C. 238; 17 Pac. 687; 30 L. Ed. 1172; 10 Ala. 386; 36 Ga. 648; 75 Ill. 81; 28 Ind. 125; 23 Ia. 527; 16 N. W. 339; 71 Am. Dec. 489; 18 N. W. 55; 3 S. E. 840; 27 Atl. 304; 13 Wis. 600; 27 Wis. 626; 74 Ark. 563; 87 Ky. 160; 91 Mo. App. 512; 88 S. W. 1126; 59 A. 142; 149 N. C. 1; 1 Speer 314. *What representation makes a warranty:* 30 Ency. 139, 136; 62 S. E. 1076; 34 Am. Dec. 500.

*Messrs. Grier, Park & Nicholson,* contra, cite: *What acts of director amount to a warranty:* 39 S. C. 51; 44 S. C. 61; 45 S. C. 471; 48 S. C. 83; 53 S. C. 528; 60 S. C. 184, 100; 74 S. C. 473; 82 S. C. 382; 65 Am. St. R. 699; 54 Am. St. R. 730; 79 Ia. 678; 118 N. Y. 365; 85 Am. St. R. 365; 8 Am. St. R. 592; 36 Am. St. R. 586; 18 Am. St. R. 485; 1 Boles. 375; 8 C. C. A. 444; 2 Thomp., sec. 4150; 2 Cook, sec. 352; 18 L. R. A. 379; 7 L. R. A. (N. S.) 646; 81 Am. D. 57; 29 Ala. 393; 35 Id. 252; 34 Id. 663; 22 L. R. A. 512; 80 S. C. 299; 12 S. C. 590; 7 S. C. 58; 2 Speer 9; Harp. 441; 15 S. C. 126; 13 S. C. 203; 41 S. C. 508; 36 Am. St. R. 586. *Statement when the information of the parties is not equal:* 50 S. C. 402.

November 20, 1912.   The opinion of the Court was delivered by

Mr. Justice Hydrick.   On a former appeal in this case (87 S. C. 87), the Court held, quoting from the syllabus, that "any direct representation made by a director of a corporation as to its financial status, with a view of inducing a stranger to buy his capital stock of the corporation, and acted on by the buyer, whether the seller actually knew the facts were as represented or not, is an express warranty."   On that appeal, the evidence showed, as it does on this, that, when plaintiff approached defendant to buy his stock in the Gambrell Hardware Company, and asked what the stock was worth, defendant told him that the books of the concern would show that it was worth $119.00 a share, and sent him to the bookkeeper to get a statement of the business of the company, which defendant directed the bookkeeper to give to plaintiff and which showed that the stock was worth 119.   It turned out, however, that this statement was erroneous, because the president of the corporation had raised the figures in the stock book, in adding the pages thereof on an adding machine, so that the stock book and the statement, which was made from it, in part, showed the value of the merchandise on hand to be greater than it actually was by more than $6,000.00; and, therefore, the stock was actually worth only $65.96 per share, while, according to the books, it was worth 119.

On the former appeal, a judgment for defendant was reversed and a new trial granted, because the trial Judge erred in charging the jury that, if they believed that defendant merely stated to plaintiff that the books of the company showed that condition, that is, that the stock was worth 119, they should find for defendant.   With regard to that instruction, the Court said: "The jury may have inferred from the testimony that when defendant referred plaintiff

to the bookkeeper of the corporation of which defendant was director and salesman, he intended and expected that the bookkeeper would do as he did, give plaintiff the written statement of the condition of the corporation. A delivery of the statement under such circumstances may well have been considered by the jury the same as if defendant had delivered it with his own hand in response to plaintiff's inquiry as to the worth of the stock. Such use of a statement of the corporate business by a director negotiating a sale of his stock therein could not be regarded as other than a direct affirmation of its correctness; and if it was delivered for the purpose of assuring the buyer of the truth of the facts therein stated and to induce him to purchase, and the buyer purchases in reliance thereon, there is an express warranty."

Upon the new trial, his Honor, Judge Gage, held that the evidence was susceptible of only one reasonable inference, to wit: that the statement was delivered for the purpose of assuring the plaintiff of the truth of the facts therein contained, and to induce him to purchase defendant's stock, and that plaintiff did buy the stock in reliance thereon. He therefore directed a verdict for plaintiff.

The sole question is, whether the evidence made any issue which should have been submitted to the jury. We agree with the Circuit Judge that it did not; but we append the substance of the testimony of both the plaintiff and the defendant, which sufficiently vindicates the ruling of the Circuit Court.

Plaintiff testified that he asked defendant what the stock was worth, and that defendant told him that the books showed that it was worth 119, and sent him to the bookkeeper for the statement, which, he said, would show what it was worth. The statement was given to him, and he testified that he purchased the stock in reliance upon the statement and defendant's assertion that it was worth 119. The defendant testified: "I told him I thought the books

would show about one hundred and nineteen, or one hundred and nineteen and a half, and if he wanted to buy my stock, to see John Major (the bookkeeper), he had been in the business ever since it was inaugurated, and he knew the business, and he could get any information he wanted from him; being his brother-in-law, I would rather he would do that. I·didn't want to mislead him in any way. At that time did you know anything more about the business than was shown by that statement? Not a thing; no, sir. You had no suspicion of any wrongdoing at all? Thought the business was in good condition—better than it ever had been. Did you at any time during the negotiation with Mr. Iler with reference.to that stock assure him of the correctness of that statement? No, sir. When you sent Mr. Iler back to the bookkeeper, you sent him to get that April statement? Yes, sir. So he got just what you sent him for? Yes, sir. You knew your bookkeeper had made a statement back there of the business, made out at your April meeting, 1907? Yes. I knew he had the statement on the books; I didn't know he had the statement on that paper. You sent him back there to get the statement? A copy of it. And he got that statement? Yes, sir. Just what you sent him to get? Yes, sir. That was done during the time you and Mr. Iler were negotiating for the sale of your stock in this company to him? Yes, sir. You were a director in the concern at that time, were you not? When I made the sale to Mr. Iler; yes, sir. You were also an officer in the concern— secretary? Yes, sir. So.you admit Mr. Iler did ask you about the value of the stock, and you told him these stock books would show what it was worth, 119? Yes, sir. Did you state to him at any time that the statement which he had got from Mr. Major was absolutely correct? I might have done so—the statement was correct, so far as taking from the books was concerned."

Affirmed.