### KIMBRELL *ET AL.* v. TAYLOR *ET AL.*

#### (133 S. E., 829)

1. CORPORATIONS.—Seller of stock is bound by warranties as to corporation's liabilities, notwithstanding buyers had superior knowledge and were better acquainted with corporation's business.

2. CORPORATIONS—AGREEMENT FOR SALE OF CORPORATE STOCK HELD TO CONTAIN AN EXPRESS WARRANTY AS TO LIABILITIES OF CORPORATION. —Agreement for sale of corporate stock, providing, "the foregoing sale is based on the statement heretofore given by sellers to buyers, approximating assets $123,098.43, liabilities $26,022.55," *held* an express warranty with reference to liabilties.

3. CORPORATIONS—SELLER OF CORPORATE STOCK HELD LIABLE FOR PROPORTIONATE SHARE OF CORPORATE INCOME TAX ON EXPRESS WARRANTY AS TO LIABILITIES OF CORPORATION.—Seller of stock of corporation, with express warranty as to liabilties of corporation, *held* liable for proportionate share of income tax for which corporation was found liable particularly in view of provision for prorating taxes for current year, indicating that seller in a way guaranteed that prior taxes were paid.

4. SALES.—Seller givng express warranty as liable whether he knew that statements constituting warranty were true or not.

Before WHALEY, J., Richland, November, 1924.   Judgment affirmed on condition that a portion of judgment be remitted, otherwise reversed and new trial ordered.

Action by W. E. Kimbrell and others against Emma D. Taylor and another.   Judgment for plaintiffs, and the named defendant appeals.

*Messrs. Fowles & Bailey,* for appellant, cite: *Meaning of "more or less":* 23 R. C. L., 1352.   *Measure of damages for misrepresentation of value of goods by vendor:* 26 C. J., 1176.   *Where vendee may easily ascertain value of goods before purchase:* 107 S. C., 200; 92 S. E., 861; 101 S. C., 221; 85 S. E., 585; 9 S. C., 35; 30 Am. Rep., 1.   *Cases distinguished:* 93 S. C., 185; 76 S. E., 276; 87 S. C., 87; 68 S. E., 1041.   *What are warranties:* Ann. Cas., 1913 C., 702.   *Benjamin on Sales:* 6th Ed., Sec. 811.   *Rescission for mutual mistake allowed in extreme cases:* 172 N. W., 907; 5 A. L. R., 250.

*Messrs. R. B. Herbert, James B. Murphy* and *Geo. L. Dial, Jr.,* for respondents, cite: *What is a warranty; not necessary to prove scienter:* 87 S. C., 87; 68 S. E., 1041; 209 P., 853.

June 29, 1926.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

Kimbrell Furniture Company, a corporation, had 30 shares of capital stock outstanding.   The defendants, Mrs. Emma D. Taylor and W. M. Kimbrell, each owned 10 shares of the stock.   They bargained to sell their shares to Jeff E. Buyck and W. F. Kleckley, two of the plaintiffs, who, contemporaneously, agreed to sell five of the shares which they were purchasing to their coplaintiff, W. E. Kimbrell.   W. M. Kimbrell, one of the defendants, acting for himself and for his codefendant, Mrs. Taylor, had a lawyer to draw a

written contract as to the sale of the stock, which contract was signed by the defendants and delivered to the plaintiffs. This contract contained the following clause:

"The foregoing sale is based on the statement heretofore given by the sellers to buyers, approximating assets $123,-098.43, liabilities $26,022.55. It is agreed by both the sellers and buyers that the taxes for the current year 1920 and the insurance and license will be duly prorated up to the time of the consummation of the said sale."

Some time after the sale and transfer of the stock had been completed, the United States government required of the corporation payment of the sum of $3,902.81 as income taxes, which should have been paid prior to the sale and transfer of the stock. It seems that none of the sellers or purchasers of the stock knew of this liability to the government, and the same was not listed as a liability of the corporation at the time of the sale of the stock.

The purchasers of the stock, the plaintiffs in this action, who are the respondents here, brought suit against the sellers, Mrs. Emma D. Taylor and W. M. Kimbrell, to recover $2,601.88, two-thirds of the amount due by the corporation to the government, which amount the purchasers of the stock had lost because of the government's claim. The complaint alleged that the liabilities of the corporation had been misrepresented, and that the shares purchased by the plaintiff of the defendants were not of the value placed upon them at the time of the sale, because of failure to include the liability to the government; that the plaintiffs would not have purchased at the price which they paid if the true amount of the liabilities of the corporation had been stated to them.

In their answer, the defendants admitted the sale of the stock and the execution of the written agreement, but they denied all the allegations as to misrepresentation by them.

At the close of all the testimony, the presiding Judge directed a verdict in favor of the plaintiffs for the full amount claimed in the complaint.

From this judgment, Mrs. Emma D. Taylor has appealed. Her codefendant, W. M. Kimbrell, has not appealed.

The appeal raises these questions: (1) That defendants' motion for a nonsuit should have been granted for the reason that no misrepresentation was shown to have been made by the defendants, and that the plaintiffs had equal opportunity with the defendants of ascertaining for themselves the assets and liabilities of the corporation. (2) That the verdict should have been directed for the defendants upon the same grounds upon which the motion for nonsuit was based. (3) That it was error to direct a verdict for the plaintiffs, there being no evidence that the defendants warranted the liabilities of the corporation to be exactly $26,022.50, nor was there any evidence of misrepresentation on the part of the defendants, and the undisputed facts showed that plaintiffs' ability to ascertain the true assets and liabilities of the corporation was superior to that of the defendants.

A careful examination of the record bears out the statement of the trial Judge to the effect that there was no testimony going to show that the contract between the parties meant otherwise than what was expressly stated therein. The result of the cause must therefore depend entirely upon the language of that written instrument.

The contention of the plaintiffs is that the contract contained an express warranty as to the amount of the liabilities of the corporation. The county Judge sustained that position.

The appellant argues, with considerable force, that the purchasers of the stock had superior knowledge to her as to the value of the stock, since she was not acquainted with the business of the corporation. The testimony bears out her claim in this respect. But since the appellant signed the written agreement, and it appearing that her execution of that paper was done fairly, freely, and honestly, she is, of course, bound by its terms.

It seems clear that the language which we have 2, 3 quoted from the contract is an express warranty, so far as that language went. In construing the contract, the real question, it seems to us, is this: Does the word "approximating" have reference only to the assets of the corporation, or does it also apply to the liabilities? It is our opinion that this particular word has no reference to the liabilities. And we think it is easy to understand why the assets would be stated "approximately," while the liabilities would be given at a definite sum. In the furniture business, it might be right difficult for even the owners, though in constant touch with the business, to state precisely the values of the stock in trade. On the other hand, a corporation ought to be able to give readily a detailed statement of its liabilities. Purchasers of stocks in a furniture corporation can see the furniture and other stock in trade, but they cannot know what notes, accounts, and other liabilities a corporation may have outstanding, even if they are permitted to see the books.

The very fact that the liabilities were listed and furnished to the purchasers of the stock seems to us to be conclusive of the fact that the sellers were warranting to the purchasers that no other liabilities existed. In addition, it also occurs to us that the agreement that the taxes for the year 1920, in which the sale of the stock was made, was to be prorated by the parties, indicates that the sellers in a way guaranteed that all taxes prior thereto had been paid by them, or the corporation, a liability which rested upon the corporation and its stockholders.

The appellants seems to rely upon the cases of *Montgomery v. Scott,* 9 S. C., 35; 30 Am. Rep., 1; *Mobley v. Quattlebaum,* 101 S. C., 221; 85 S. E., 585; and *Whitman v. S. A. L. Ry.,* 107 S. C., 200; 92 S. E., 861; L. R. A., 1917F, 717. We do not think that these cases are in point, for in neither of them does it seem to us that there was an express warranty, as is found here.

22—S. C.—135.

In the case at bar there was such warranty, and it is immaterial whether the sellers knew that their statements were untrue or not. 35 Cyc., 378. There were only three issues properly before the trial Court. These were: (1) Was there a warranty as to the liabilities? (2) Did the corporation have liabilities other than those which were listed? (3) Did the plaintiffs suffer loss on that account?

While the facts in the case of *Iler v. Jennings,* which was heard in this Court twice, being reported at 87 S. C., 87; 68 S. E., 1041, and at 93 S. C., 185; 76 S. E., 276, are not identical with the facts in the case here, the principles involved in that case are very much similar to the principles here. In the cited case, the defendant, a director of the corporation, referred the plaintiff, who wished to purchase stock, to the bookkeeper of the corporation for information. Upon the statement shown by the bookkeeper, the purchase was made. It was discovered later that the statement was incorrect. This Court held that there was a warranty on the part of the seller of the stock. While Mrs. Taylor was not a director of the corporation, and although it appears that she did not know anything about the business of the concern she sold her stock upon the written representation that the liabilities only aggregated a certain amount, and, it appears, furnished to the purchasers a list showing these liabilities. While she was perfectly innocent of the liability to the government, the debt existed at the time she sold her stock, and it was proper for the Court to hold that she was responsible to the purchasers for the loss they sustained on account of the purchase of her stock. All the testimony sustained the claims of the plaintiffs.

It appears, however, that, in so far as the appellant Mrs. Taylor is concerned, that it was error to direct a verdict against her for the full amount claimed by the plaintiffs. The stock sold by Mrs. Taylor and her codefendant was not owned by them jointly. Mrs. Taylor only owned 10 shares, and her codefendant owned 10 shares. She had

nothing to do with the sale of his stock. Mrs. Taylor should have been required to pay only one-half of the plaintiffs' claim. When attention was called to this fact in this Court, the respondents readily conceded that this was right and just. The matter seems to have been overlooked in the county Court by the trial Judge and all the attorneys. The judgment of the county Court in favor of the plaintiffs should therefore be reduced and corrected as stated.

In accordance with the views herein expressed, it is the judgment of this Court that the judgment of the county Court of Richland County be reversed and a new trial of the cause be ordered, unless the plaintiffs shall, within 20 days after the filing of the remittitur in the said county Court, remit on the record of their judgment the sum of $1,300.94, as to each of the defendants; upon such remission, that the judgment of the county Court be affirmed.

MR. JUSTICE WATTS concurs.

MR. JUSTICE STABLER, and MR. ACTING ASSOCIATE JUSTICE PURDY concur in result.

MR. JUSTICE COTHRAN dissents.

MR. ACTING ASSOCIATE JUSTICE PURDY: I concur in the result for the reasons stated in the opinion of Mr. Justice Blease. Besides, if there was not a warranty, there was a failure of consideration, and in such a sum that it is not reasonable to infer that the purchaser would have stood this loss, and especially so in view of the prorating of similar items which were known to seller and buyer.

MR. JUSTICE COTHRAN: I do not concur in the opinion of Mr. Justice Blease in this case, being of opinion that the defendant's motion for a directed verdict should have been granted, for the reasons which I shall endeavor to make clear.

This is an action for damages on account of an alleged breach of an express warranty in the sale of certain stock in a corporation.

The facts are these: Prior to January, 1920, Kimbrell Furniture Company, a corporation, was doing business in

the city of Columbia.   The capital stock consisted of 30 shares (the par value thereof does not appear in the record, nor is it material) ; it was owned by the defendant W. M. Kimbrell, 10 shares, one Taylor, the husband of the defendant Emma D. Taylor, 10 shares, and other or others (not stated in the record) 10 shares.   Mr. Taylor died, and his holdings, 10 shares, were acquired, in some way not explained, by his widow, the defendant Emma D. Taylor. During the lifetime of Mr. Taylor, the business was operated by W. M. Kimbrell and Mr. Taylor.   After his death and the acquisition of his stock by Mrs. Taylor, it does not appear that she took any part in the operation of the business, or knew anything of its affairs.

On January 12, 1920, Mrs. Taylor and W. M. Kimbrell, the defendants, entered into a written agreement with the pliantiffs, J. E. Buyck and W. F. Kleckley, for the sale to them of 20 shares of stock owned by them, separately, at the price of $30,000, a part of which was paid in cash and the remainder provided for in deferred payments.   The complaint alleges :

"Said sale being based on a percentage valuation of the said corporation's assets, after deducting the liabilities as shown by the corporation's books."

The defendant W. M. Kimbrell testified, and it was not objected to or controverted :

"We took the assets and liabilities, deducted the liabilities from the assets and were supposed to sell at 50 cents on the dollar all the way through, which amounted to a little bit more than we got for it.   They made a flat offer of $30,-000, and it (that is, the 50 cents on the dollar, I interpolate), was really more than that, but we accepted that figure."

The contract entered into contained the following statement :

"The foregoing sale is based on the statement heretofore given by the sellers to buyers : Approximating assets $123,098.43 ; liabilities $26,022.50.   It is agreed by both the sellers and buyers that the taxes for the current year

1920 and the insurance and license will be duly prorated up to the time of the consummation of the said sale."

On January 23, 1920, the plaintiffs Buyck and Kleckley, who had purchased the stock from W. M. Kimbrell, and Mrs. Taylor, entered into an agreement with their coplaintiff, W. E. Kimbrell, for the sale of five of the 20 shares of that stock, "upon the same basis of valuation as goverened the first agreement" (quoting complaint). The latter agreement was in fact contemplated in, and was virtually a part of the agreement first referred to, between the buyers and the sellers of the 20 shares. Both agreements were carried out; five shares were transferred to W. E. Kimbrell and the other 15 to Buyck and Kleckley, in what proportions does not appear.

At some time after the trade for the stock had been consummated, the date not appearing in the record for appeal, the Federal Government, reviewing the income tax returns of the corporation for the years 1916, 1917, 1918, assessed it with the following additional taxes:

| 1916 | $ 64.43 |
| 1917 | 1,424.68 |
| 1918 | 2,413.70 |
| Total | $ 3,902.81 |

Two-thirds of this amount, the proportion which the stock sold bore to the whole stock, 20 to 30, amounts to $2,601.88, for which the plaintiffs demanded judgment against the defendants.

The case was tried before his Honor, Judge Whaley, of the Richland County Court, and a jury. At the close of all of the evidence, his Honor, overruling the motion of the defendants for a directed verdict, directed a verdict in favor of the plaintiffs against both of the defendants for $2,601.88, that being two-thirds of the income tax deficiency which had been paid, by the corporation, as it is stated in the record, in 1923 and 1924. From the judgment entered

upon this verdict the defendant Emma D. Taylor alone has appealed.

The plaintiffs have united in one action what are in reality six separate and distinct causes of action: Two in favor of each plaintiff, one against each of the defendants. No objection, however, has been interposed to the misjoinder. That fact does not prevent a consideration of the cause of action against the appellant Mrs. Taylor, as if she had been sued alone by any one of the plaintiffs, and that I will proceed with.

As explained in the opinion of Mr. Justice Blease, no judgment in excess of one-half of the loss sustained by the combined plaintiffs, $1,300.94, can be entered against Mrs. Taylor. Of that amount the plaintiffs, respectively, if entitled to recover at all, would be entitled to $325.24, $487.85, $487.85—total $1,300.94—against each of the defendants.

Now take the case of the plaintiff W. E. Kimbrell: I do not think that he has the shadow of a claim against Mrs. Taylor. He was either a stockholder or a very important employee of the corporation at the time of the transfer of the stock. It was he who prepared the statements upon which the erroneous income taxes for the three years in question had been estimated. He knew a great deal more about the business than Mrs. Taylor; he admits it in his testimony, and I see no earthly reason for him now to take advantage of his own errors. This obstruction to his claim is in addition to the same herein after urged against the claims of the other two plaintiffs, who do not appear to have been connected in any way with either the statement or the income tax returns.

The claims of the other two plaintiffs, Buyck and Kleckley, are identical and will be taken up· together. They claim that Mrs. Taylor, by the clause in the contract above quoted, expressly warranted that the liabilities of the corporation did not exceed $26,000 (in round numbers), that as a matter of fact they were $3,900 more, and that she is

liable to the three plaintiff-stockholders for one-half of two-thirds of that amount, $1,300.    I think that there are absolutely conclusive reasons why this contention cannot be sustained.   In the first place it is specifically alleged in the complaint that the sale was "based on a percentage valuation of the said corporation's assets after deducting the liabilities as shown by the corporation's books."    The plaintiffs themselves have interpreted the clause in the contract in reference to the statement of liabilities to mean "the liabilities as shown by the corporation's books."   The warranty then, according to the complaint, can extend no further than the plaintiffs claim that it did; and there is no contention even that the liabilites as stated in the statement did not conform to the liabilities as they appeared on the books.

I really do not think that it is necessary to go a step further in the case than this; but there are still other matters which sustain the same conclusion and a consideration of them appears out of place.

It is insisted that the clause in the contract constitutes express warranty of the liabilities of the corporation, and an approximate estimate of the assets; in other words ,"that this particular word (approximating) had no reference to liabilities." A reading of the clause it seems to me demands, grammatically, the construction that the word qualifies the word "statement" which included both assets and liabilities, and that both were therefore approximate amounts.   It is: "The foregoing sale is based on the statement heretofore given, by the sellers to buyers:   Approximating assets, $123,098.43; liabilities, $26,022.55."    Omitting the qualifying or rather identifying phrase, heretofore given by the sellers to buyers," it reads:   "The foregoing sale is based on the statement:  * * *  Approximating assets, $123,098.-43; liabilities, $26,022.55."   Can it be doubted that the word "approximating" qualifies the word "statement," which in-

cludes both assets and liabilities? If so, necessarily, both assets and liabilities were approximated, estimated.

. The argument is plausible that ordinarily the assets of a business are variable, uncertain, that the liabilities are supposed to be capable of exact ascertainment, and that therefore the construction is forced upon the Court that in this particular case, Mrs. Taylor intended to warrant the liabilities but only to approximate the assets. Usually the presumption is well founded, but it is not necessarily so. Many instances of contingent liabilities may be imagined, and the circumstances of this case demonstrate that the presumption is not well founded, for here a liability has developed that no one connected with the business had the slightest idea existed.

The trial Judge, in granting the motion for a directed verdict, placed his ruling solely upon the construction contended for by the plaintiffs, for he adds:

"If the word 'approximating' was to go with liabilities, then it would allow a margin there that might have included variations in the taxes and it would not have warranted exactly, but approximately."

While this is the law of the case, it may be proper to say, lest that statement "be drawn into a precedent," that if the sale had been upon a basis of par value or near it, there might arise a question whether a variation of $3,900 in the amount of the liabilities stated, as $26,000 would have .constituted a legitimate approximation. But the circumstances of this case, where the plaintiffs purchased upon a basis of less than 50 per cent. of the net valuation of the assets, and practically acquired $64,000 worth of property for $30,000, the rule of approximation may well be liberally applied.

The estimated assets were ...................$123,000
The liabilities .............:............... 26,000

Net assets ...............................$ 97,000

One-third for other stockholders.............. 32,335

|                                          |          |
|------------------------------------------|----------|
|                                          | $64,667  |
| If the deficiency tax of.....................$ | 3,900  |
| Be added to liabilities......................  | 26,000 |

|                                          |          |
|------------------------------------------|----------|
| Making  ...................................$ | 29,900 |
| And this deducted from assets............... | 123,000 |

|                                          |          |
|------------------------------------------|----------|
| Leaving net assets.........................$ | 93,100 |
| One-third for other stockholders ..............  | 31,033 |

$  62,067

—the plaintiffs would be acquiring $62,000 worth of property for $30,000, $1,000 less than the 50 per cent. in contemplation. I think that this fact may well be taken into consideration in determining whether the seller intended to warrant the liabilities at $26,000, knowing that the buyers could easily make up the estimated liabilities out of the other 50 per cent., and also in determining whether the statement of the liabilities at $3,900 less than they proved to be was within the rage of approximation.

Assuming that there was an express warranty of the amount of the liabilities: If the plaintiffs had purchased the stock at its full book value, two-thirds of $97,000, $64,000, there would be no difficulty in ascertaining the amount of thier loss by the amount of the tax deficiency, $3,900. It is significant however that while the plaintiffs allege that, "had the plaintiffs been aware of the true amount of the liabilities of the said corporation, they would not have purchased said shares at the price at which they were quoted," they do not allege at what price they would have bought had they known of the unincluded tax deficiency, or that they would not have bought at all. The measure of their damage caused by the misrepresentation is the excess over what they were willing to buy at and could have bought, had the liabil-

ity been known, and that has not been shown. Buying at $1,000 less than 50 per cent. upon the valuation of the net assets, it is not improbable that if they had known of the deficiency the offer of $30,000, for a $64,000 interest would still have been made or very slightly reduced. At any rate it was incumbent upon the plaintiffs to establish the necessary elements of their damage.

The defendant W. M. Kimbrell testified that even if the tax deficiency had been known at the time of the sale the proposed offer of 50 per cent. would not have been altered.

There are such marked distinctions between the case of *Iler v. Jennings,* 87 S. C., 87; 68 S. E., 1041; and Id., 93 S. C., 185; 76 S. E., 276; and the case at bar, that it affords little assistance in deciding this case. It is important only in the declaration that a direct representation by a director of a corporation as to its financial status, as an inducement to the purchase of his stock, acted upon by the buyer, is an express warranty.

I think that the case at bar falls very far short of the above declaration. I do not believe that Mrs. Taylor ever intended to bind herself to make good a most undefined and unknown liability of the corporation. She doubtless was bound by the statement of the liabilities as they appeared on the corporation's books and no further, and interpretation of the contract which the plaintiffs have alleged and cannot get away from.

I think that in any event, should my position that the plaintiffs are bound by the allegations of the complaint be not sustained, the case should be remanded to the county Court for the determination of the issues whether the defendant under the circumstances intended an express warranty of the liabilities, and whether the variation was within the rule of approximation.